IN the MATTER OF the TERMINATION OF PARENTAL RIGHTS
to M.A.M., S.M. and S.M., minors: M.W. and I.W.,
Appellants-Petitioners,

v.

MONROE COUNTY DEPARTMENT OF HUMAN SERVICES,
Respondent.

Supreme Court

*No. 82–1576. Argued October 3, 1983.—Decided January 31, 1984.*

(Also reported in 342 N.W.2d 410.)

For the appellants-petitioners there was a brief by
*Gary L. Olstad* and *Olson, Trapp & Olstad,* La Crosse,
and oral argument by *Gary L. Olstad.*

For the respondent there was a brief and oral argument by *Heidi L. Habel,* assistant district attorney.

HEFFERNAN, C. J. This is a review of a decision of the court of appeals[1] affirming the order of the circuit court for Monroe county, James W. Rice, Circuit Judge, which terminated the parental rights of M.W. and I.W. to their children, M.A.M., S.M., and S.M. We reverse and remand for new proceedings because the trial judge failed to follow the directions of sec. 48.23 (2), Stats., in respect to representation by counsel, and failed to inform the parents of their right to a jury trial as required by sec. 48.422 (1) and (4).

The following facts of record are pertinent to this review. M.A.M., S.M., and S.M. are three of the children of M.W. and I.W.

After the children had been removed from the parents' home for several years, the county department of human services sought the termination of the parental rights. Because we do not explore the merits of the termination, we will not set forth the grounds for the department's petition.

A petition for the termination of parental rights was filed on October 21, 1981, and the initial hearing was held on November 30, 1981. Sec. 48.422 (1), Stats., provides that the hearing on the petition "shall be held within 30 days after the petition is filed." The same subsection of the statute provides that:

"At the hearing on the petition to terminate parental rights the court shall determine whether any party wishes to contest the petition and inform the parties of their rights under sub. (4) . . . ."

Sub. (4) provides:

"Any party . . . shall be granted a jury trial upon request if the request is made before the end of the initial hearing on the petition."

[1] Unpublished opinion (December 7, 1982).

On November 30, 1981, pursuant to the petition and notice, the parents appeared in the circuit court for Monroe county before James W. Rice, Circuit Judge. It was determined by the judge, following an inquiry by the clerk of court, that the parents were not indigent. The court then informed the parents that they would have to hire their own attorney. The following colloquy took place:

"[M.W.] : Well, we was supposed to have Tom Olson down here. Didn't he call your office this morning?
"THE COURT: No, he did not.
"[M.W.] : Then he must have not been in the office up there. We called him this morning and he said they would give you a buzz but he must not have went to the office or had something else to do."

The court then set the case for a hearing on December 18, 1981. That hearing was rescheduled and was had on January 8, 1982.

In the interim following the hearing on November 30, 1981, Attorney Olson wrote the court, apparently in response to a notice sent to him, stating that he "[had] not been contacted by [M.W.] on this matter." He further stated:

"I have forwarded a copy of the notice to her to inquire if she is requesting legal services. Unless I hear from her differently, I must assume that I am not retained and will not be appearing."

Nevertheless, on January 8, 1982, Attorney Gary Olstad appeared on behalf of M.W. and I.W. Attorney Olstad is a lawyer in the same office as Attorney Olson. The record supports the conclusion that neither Attorney Olson nor Attorney Olstad was aware of any duty to represent M.W. and I.W. at the first hearing on November 30, 1981. At the January 8, 1982, hearing, Attorney Olstad appeared without his clients. He stated that he believed it to be the initial hearing and asserted that he

was unaware of the hearing on November 30. He asked for a continuance because his clients were not present. He had anticipated that the January 8 hearing was to be the initial hearing or a scheduling conference. Olstad asked for dismissal for lack of jurisdiction because his clients were not given personal notice of the hearing. The court took the position that the parents were given due notice by their presence at the November 30 hearing. The testimony of two witnesses was taken despite the objections of Attorney Olstad and the absence of the parents.

On February 15, 1982, Olstad moved to dismiss the proceedings or, in the alternative, asked for a new scheduling hearing because the court had failed to advise the parents of their right to counsel, the right to a jury trial, and the right to a continuance of the November 30 hearing. The motion was denied, the trial went on, and was completed on April 14, 1982. Findings of fact were made on that date, and on May 18, 1982, an order was entered terminating the parental rights of the parents.

It was from this order that appeal was taken. The court of appeals affirmed. It perfunctorily disposed of the contention in respect to counsel, stating:

". . . the trial court had no duty to advise appellants of their right to counsel when the court knew they had already *engaged* an attorney." (Emphasis supplied.)

The court of appeals acknowledged that the trial court had a duty to inform a parent that, upon request, a jury trial could be had. It reasoned that, under the statutes, the request must be made before the end of the initial hearing. It also pointed out that the parents had not requested a jury trial prior to the end of the initial hearing. The court of appeals, accordingly, concluded that a jury trial request was waived.

On the appeal, the parents also asserted that the judge should have recused himself because of his prior contact with the parties and because, by his comments during the

course of the trial, he showed himself to be prejudiced against them. The court of appeals concluded that the record failed to provide any evidence of prejudice.

Upon the review in this court, the parents have shifted their emphasis to point out that, under sec. 48.422(5), Stats., a continuance shall be granted for the purpose of consulting an attorney either in respect to requesting a jury trial or in respect to a request for substitution of a judge. Hence, as Attorney Olstad points out in his supreme court brief, these rights are meaningless if the court, without making an appropriate inquiry, determines that there is a waiver of these statutory protections while laboring under a belief, not supported by the facts, that a party is represented by counsel. Sec. 48.422 (5) provides:

"(5) Any nonpetitioning party, including the child, shall be granted a continuance of the hearing for the purpose of consulting with an attorney on the request for a jury trial or concerning a request for the substitution of a judge."

It is apparently the parents' assertion that none of the rights that are afforded by statute were allowed them because the trial court in effect denied them counsel and the court of appeals erroneously viewed the record in such a manner as to conclude that the parents had representation as required by the statutes.

We conclude that the trial court failed to follow the explicit directions of the legislature; and, therefore, it should have been reversed by the court of appeals.

We need not reiterate this court's numerous holdings that the power of the state to terminate the parental relationship is an awesome one, which can only be exercised under proved facts and procedures which assure that the power is justly exercised. The parental right is accorded paramountcy in most circumstances and must

be considered in that light until there has been an appropriate judicial proceeding demonstrating that the state's power may be exercised to terminate that right.

It is apparent that the Wisconsin legislature has recognized the importance of parental rights by setting up a panoply of substantive rights and procedures to assure that the parental rights will not be terminated precipitously, arbitrarily, or capriciously, but only after a deliberative, well considered, fact-finding process utilizing all the protections afforded by the statutes unless there is a specific, knowledgeable, and voluntary waiver.[2]

Among the procedures enumerated by the legislature in sec. 48.23 (2), Stats., is that a minor parent must have counsel and that counsel cannot be waived. However, ". . . any parent 18 years old or older who appears before the court shall be represented by counsel; but the parent may waive counsel provided the court is satisfied such waiver is knowingly and voluntarily made."

The legislature placed great emphasis upon the necessity of counsel. The legislative edict is that, in termination proceedings, "any parent . . . shall be represented by counsel."

While in the case of adult parents there can be a waiver if "knowingly and voluntarily made," in the instant case there was no intimation of waiver. The trial court here proceeded on the basis that the parties were represented, because M.W. said that she had called "him" and "he said they would give you a buzz but he must not have went to the office." This uncertain recounting falls short of being a statement that the parents had discussed the matter at issue with a particular lawyer or that they

---

[2] The statutes, especially sec. 48.23(1), Stats., also insure the adequate representation of the rights of the child. Those rights are not directly at issue in this case and will not be dealt with.

had been given any legal advice. About the most that can be gleaned from M.W.'s statement is that she called Attorney Olson's office. Whether she ever talked to him is unclear. His letter of December 23, 1981, indicated that he was totally unaware of the November 30, 1981, proceedings and had not been retained even in December. If we were to conclude that the trial judge could have reached the conclusion that M.W. had called Attorney Olson and told him about the hearing—and we think this most conjectural—could he have reasonably reached the conclusion required by the statute that the parent was represented by counsel. We think not. The court of appeals acknowledged that the statute requires that a parent be represented unless there was a knowing and voluntary waiver. The scrivener for the court of appeals nevertheless leaped to the irrelevant conclusion that M.W. had "engaged" Attorney Olson and then further concluded "that the trial court had no duty to advise appellants of their right to counsel when the court knew they had already engaged an attorney."

The statute is ambiguous in that it does not define exactly what "representation" means, but it is obvious that merely the "engagement" of an attorney—the contracting to represent—is not the same as the requirement of the statute—the *in praesenti* representation of the parent while in court. The statute says nothing about the duty of the court to advise a parent of his or her right to have counsel. Rather, the duty of the court is to see to it that the parent is represented unless, in the case of an adult, there is a knowledgeable and voluntary waiver. Hence, the court of appeals was wrong when it said, because the parent had arguably "engaged" counsel, the statute was satisfied. The obligation went beyond the advice that the parents had the right to counsel. The court's obligation was to assure there was representation in court unless there was a knowledgeable and voluntary waiver. It

is clear from the record that the parents knew they had the right to be represented. There was no need to give that advice; but the duty of the court, before it could allow the state to attempt to exercise its power to terminate the parental right, was to see that, absent a waiver, there was in fact representation. This it did not do; and even if a lawyer had been "engaged," there was no evidence of representation in the sense required by the statute.

We conclude that the words of the statute—twice repeated, once in respect to minors and, then again, in respect to adults, that "any parent . . . who appears before the court *shall be represented by counsel"* (emphasis supplied)—carry the implicit requirement that counsel be *in court* to satisfy the requirement of the statute. The attorney must be present at the hearing. If it is the intention of an adult parent not to have a lawyer physically present, it becomes the duty of the court to determine by careful questioning that the waiver of counsel's presence is knowledgeable and voluntary.

We believe the ancillary rights—the right to request a jury trial and the right to substitution of a judge—would in the instant case have fallen into their proper place had the trial judge made the correct determination in respect to representation in court by counsel.

The statute also requires that there must be a specific statement to the parties, whether they are represented or not, that they have a right to a trial by jury and that the request to exercise that right must be made prior to the termination of the initial hearing. Sec. 48.422(1) and (4), Stats. The right to a continuance for legal advice secured by sec. 48.422 would be meaningless if the parties are not informed of the nature of that right. Hence, it is implicitly the duty of the judge not only to advise of the right to have counsel, but to state that the statutes

give the right to a continuance for the purpose of consulting an attorney. As a matter of law, a waiver of counsel could not be knowledgeable under the parental-termination statutes unless the party is told by the judge the specific nature of a party's inquiries which may be directed to counsel, *i.e.*, trial by jury and substitution of judge.

A party may be his or her own counsel, but, in any event, whether represented or not, a party must be told of the right to trial by jury and the right to a substitution of judge. Whether a party exercises those rights personally, if there is a waiver of counsel or through counsel is irrelevant; but the statutes clearly afford a party to a termination proceeding the option to exercise those rights.

That "represented by counsel" should be construed to require a trial judge to determine that there is, in fact, representation in court (or there is a proper waiver) is borne out by the legislative history. In respect to sec. 48.23 (2) (a), Stats., the Legislative Reference Bureau in its bill analysis stated:

"2. *Right to Counsel.* The bill provides the right to legal counsel in serious proceedings such as delinquency and waiver of jurisdiction, placement of a child outside his or her home and termination of parental rights. The court may provide for counsel in other matters."

The general policy statement in respect to procedures and actions of the Children's Code appears in sec. 48.01 (1) (a), Stats.:

"(a) To provide judicial and other proceedings through which children and *all other interested parties* are assured fair hearings and their constitutional and other legal rights are recognized and enforced . . . ." (Emphasis supplied.)

Sec. 48.01 (2), Stats., in respect to the Children's Code, generally states:

"(2) This chapter shall be liberally construed to effect the objectives contained in this section. The best interests of the child shall always be of paramount consideration, but the court shall also consider the *interest of the parents* or guardian of the child, the interest of the person or persons with whom the child has been placed for adoption and the interests of the public." (Emphasis supplied.)

Thus, it is apparent that the legislative intent of securing a fair procedure to parents would not be served by merely determining that a parent had "engaged" a lawyer or knew of the right to have a lawyer at a termination hearing. We conclude that the legislature intended to be expansive in its according of legal rights to parents even as it was expansive in providing that children and their rights be fully protected. There is no intimation in the statutes that would support the position of either the trial court or court of appeals that either the retaining of a lawyer or the knowledge that there was a right to have a lawyer in court satisfies the court's duty of assuring representation in court. We also reiterate in passing that the court of appeals' conclusion that an attorney had been "engaged" is blatantly inaccurate. At the most, it appears there was a call made to Attorney Olson's office and a request for representation. Only a unilateral request for counsel by a parent is even suggested by the record.

The statutory direction is unequivocal: A parent has the right to representation in court unless there is a waiver; and, in any case, the trial court has the duty to make a full explication of the statutory rights—the right to representation, the right to a continuance, the right to request a jury trial, and the right to request a substitution of judge.

Although we are satisfied that there should have been no misunderstanding of the nature of the legislature's

command to courts in respect to these requirements, this is the first opportunity this court has had to consider these requirements. Although serious human rights are implicated in the termination-of-parental rights proceedings, the proceeding is civil in nature. Accordingly, we conclude that it is appropriate in determining the question of retroactivity or not to apply the test of *Chevron Oil Co. v. Huson,* 404 U.S. 97 (1971), approved by this court in *Kurtz v. City of Waukesha,* 91 Wis. 2d 103, 109, 280 N.W.2d 757 (1979). The effect of this ruling, as a matter of policy, shall be prospective only, except that the principles of this case are to be applied to this case and other cases which have not been finalized on the date of the release of this opinion. *Linkletter v. Walker,* 381 U.S. 618, 622 n. 5 (1965) ; *United States v. Johnson,* 457 U.S. 537 (1982). We conclude that, in respect to cases of this nature, the termination of parental rights, it would be contrary to public policy to re-open cases that have been completed and for which direct review is no longer available. Chapter 48.01 Stats. states unequivocally that the overall and underlying legislative policy is "the best interest of the child." While the interest of a parent is served by enforcing the rules of fair play in termination proceedings, those interests, in the case of a finalized case, must yield to the paramount interest of children. It would be contrary to the explicit public policy declaration of the legislature to reopen cases involving questions of placement custody and parentage of children which have been thought to be long decided.

The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for Monroe county for all proceedings subsequent to the filing of the petition of the Monroe County Department of Human Services for the termination of the parental rights of M.W. and I.W. The proceedings heretofore had are vacated. The parties may if they wish stipulate to the in-

clusion of all or portions of the testimony and evidence heretofore produced in the vacated proceedings in the proceedings that may hereafter ensue.

*By the Court.*—Decision reversed and cause remanded with directions to circuit court.