IN the INTEREST OF A.A.L., a person under the age of 18 years: D.G., Appellant,

v.

F.C., Respondent. [Case No. 88-1548.]

IN the MATTER OF the ADOPTION OF A.A.L.: R.G., Appellant,

v.

F.C., Respondent. [Case No. 88-1549.]

Court of Appeals

*Nos. 88-1548, 88-1549. Submitted on briefs May 31, 1989.— Decided July 12, 1989.*

(Also reported in 448 N.W.2d 239.)

On behalf of the appellant the cause was submitted on the brief of *John F. Hallanger* of *Druck & Swartzberg, S.C.* of Milwaukee.

On behalf of the respondent, the cause was submitted on the brief of *Andrew C. Ladd* of *Cappozzo & Ladd.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   D.G. and R.G., husband and wife, (the G.'s) appeal from an order directing that they pay the transportation costs of F.C. between the state of Wisconsin and the state of Arizona for hearings on the termination of F.C.'s parental rights and the stepparent adoption of F.C.'s child by R.G.[1] The G.'s argue that the order is an abuse of discretion because it is without legal basis. They also argue that F.C.'s right to personally attend the hearing is not absolute and that the circuit court abused its discretion when it failed to apply a balancing test and consider, among other factors, additional or substitute procedural safeguards that could be used in lieu of F.C.'s personal attendance. Finally, the G.'s argue that the circuit court should have ordered the state of Wisconsin or Waukesha county to pay F.C.'s transportation costs.

We conclude that a circuit court is legally empowered to order a petitioner in a termination of parental rights and adoption action to pay a respondent's transportation costs as a condition for proceeding with the actions. Whether such an order is proper under the facts

---

[1]This court granted D.G.'s and R.G.'s petitions for leave to appeal the non-final order on October 4, 1988. The two appeals were also consolidated on that date.

of a given case is governed by abuse of discretion considerations. Based on the record before the circuit court in these cases, we conclude that the court did not abuse its discretion in ordering the G.'s to pay F.C.'s transportation costs. We also conclude that the issue of whether there were appropriate alternative methods of securing F.C.'s meaningful participation in the hearings was never raised in the circuit court and thus is not properly before us on appeal. Finally, we find no authority for the argument that the state of Wisconsin or Waukesha county should pay F.C.'s transportation costs. Accordingly, we affirm the order.

D.G. gave birth to A.A.L. on December 26, 1985. F.C. is the putative father of A.A.L. D.G. and F.C. were never married to each other, nor has F.C. been adjudicated the father of A.A.L. However, F.C. acknowledges that he is A.A.L.'s father. F.C. had contact with A.A.L. twice in the spring of 1986, but is currently serving a prison term in the state of Arizona.

In 1987, D.G. married R.G. Soon thereafter, D.G. began an action to terminate F.C.'s parental rights to A.A.L. At the same time, R.G. petitioned the circuit court for stepparent adoption of A.A.L. These two cases were consolidated in the juvenile court before Judge James R. Kieffer. The public defender's office appointed counsel for F.C., who is indigent. Through his counsel, F.C. requested a jury trial and asserted his right to be present at trial. The G.'s then requested the juvenile court to determine who was financially responsible for obtaining F.C.'s presence at the hearings. The G.'s specifically requested that the court order either F.C. or the state of Wisconsin to bear F.C.'s transportation costs.

For purposes of properly framing the issues on this appeal, it is important to put the issues before the juvenile court in their proper perspective. At the motion

hearing, the G.'s acknowledged that "[F.C.] does, of course, have the right to appear in the proceeding." It appears that all parties and the court took this to mean that F.C.'s physical presence was required. The question of F.C.'s statutory or constitutional right to physically attend the proceedings was not raised with the trial court and is not before us on appeal. Thus, the issues narrowed to whether the trial court *could* legally order the G.'s to pay F.C.'s transportation costs as a condition for proceeding with their actions and, if so, whether the G.'s, the state or the county should pay these costs. [2]

The G.'s first argued in the juvenile court that F.C. had failed to present the court with any authority for the proposition that they, as petitioners, could be obligated to pay F.C.'s transportation costs. Absent such authority, the G.'s contended that F.C. must bear his transportation costs associated with his defense of the actions. F.C.'s counsel argued that F.C. was unable to pay the $3000 to $5000 transportation costs due to his indigency and that the G.'s must bear the responsibility for these costs because they wished to terminate F.C.'s parental rights and initiated the actions.

The juvenile court agreed with F.C. We set the court's ruling out in detail:

---

[2]It may be that F.C.'s degree of meaningful participation is properly determined by the balancing test of *Mathews v. Eldridge,* 424 U.S. 319, 334–35 (1976), employed by the United States Supreme Court in *Lassiter v. Department of Social Servs.,* 452 U.S. 18, 27–28 (1981), when considering a parent's right in termination proceedings to representation by counsel. This issue, however, is not before us as it was never raised in the juvenile court. Instead, F.C.'s right to physical presence was taken as a given and the parties did not explore any lesser forms of participation for F.C.

The issue as to who pays for this type of cost is no where [sic] stated in the Children's Code. I know of no case or any statute that requires that [F.C.] himself has any burden to come forward to come up with these types of expenses, particularly in this type of situation, and particularly in light of the allegation that he is indigent.

If [F.C.] was not in the setting that he was in that would undoubtedly change the entire scenario of this case. Then the Petitioners could merely attempt to serve personally [F.C.], and if that was not successful, then utilize other methods, including publication. Obviously, we cannot do that, and we know exactly where [F.C.] is, and he has a right to be present to contest these proceedings.

This Court itself does not feel that it has the authority to order that Waukesha County or even the State of Wisconsin pay for the cost of transporting [F.C.] back to address these matters. It appears in this Court's opinion that that is a cost that the Petitioners may have to bear themselves if, in fact, they wish to carry forward this action.

The Court would deny the motion made by the Petitioners. Again, it appears that the transportation costs, if forwarded by the Petitioners, would be the only way for this action to proceed unless, of course, [F.C.] was able to appear here on a voluntary basis, or he was released from his custodial setting.

On appeal, the G.'s contend that the juvenile court abused its discretion because the order is without legal authority. They also contend that order is invalid because the court's decision fails to consider relevant factors, such as ability to pay, the cost and inconvenience of transporting F.C. to Wisconsin, and the use of alternative means of F.C.'s participation short of physical presence. We deem much of this latter challenge waived as the factors alleged by the G.'s on appeal were

not asserted before the juvenile court. *See Ford Motor Co. v. Lyons,* 137 Wis. 2d 397, 464-65, 405 N.W.2d 354, 381 (Ct. App. 1987). To the extent we do address this argument, based upon the limited information provided the court, we conclude that no abuse of discretion occurred.

■

We address first the legal question of whether the circuit court is empowered to order a petitioner in a termination of parental rights and adoption actions to pay the respondent's transportation costs as a condition for proceeding with the actions.[3] On questions of law, we we owe no deference to the ruling of the juvenile court. *Walter v. Cessna Aircraft Co.,* 121 Wis. 2d 221, 231, 358 N.W.2d 816, 821 (Ct. App. 1984).

■

The circuit court correctly noted that the termination of parental rights statutes are silent on the issue presented. Nor is there any case law directly on point. Nonetheless, it is well established that a proceeding to terminate parental rights addresses a fundamental right which requires judicial protection. The United States Supreme Court has declared:

> This Court's decisions have by now made plain beyond the need for multiple citation that a parent's desire for and right to "the companionship, care, custody, and management of his or her children" is an important interest that "undeniably warrants deference and, absent a powerful countervailing interest, protection."

*Lassiter v. Department of Social Servs.,* 452 U.S. 18, 27 (1981) (quoting *Stanley v. Illinois,* 405 U.S. 645, 651 (1972)).

---

[3]*See supra* note 2.

The Wisconsin Supreme Court has stated that the state's power to terminate the parental relationship is "an awesome one, which can only be exercised under proved facts and procedures which assure that the power is justly exercised." *In re M.A.M.*, 116 Wis. 2d 432, 436, 342 N.W.2d 410, 412 (1984).

> It is apparent that the Wisconsin legislature has recognized the importance of parental rights by setting up a panoply of substantive rights and procedures to assure that the parental rights will not be terminated precipitously, arbitrarily, or capriciously, but only after a deliberative, well considered, fact-finding process utilizing all the protections afforded by the statutes unless there is a specific, knowledgeable, and voluntary waiver.

*Id.* at 437, 342 N.W.2d at 412-13. A parent's interest in the companionship, care, custody, and management of his or her child is cognizable and substantial, and the integrity of the family is subject to constitutional protections through the due process clause of the state and federal constitutions. *In re D.L.S.*, 112 Wis. 2d 180, 184, 332 N.W.2d 293, 296 (1983).

In *M.A.M.*, our supreme court characterized the juvenile court's task in assuring that counsel be provided or properly waived in a termination of parental rights case as a "duty" and "obligation." *M.A.M.*, 116 Wis. 2d at 438, 342 N.W.2d at 413. Failure to do so resulted in a reversal of the order terminating the parental rights in *M.A.M. Id.* at 441-42, 342 N.W.2d at 414-15. We view the ability of a respondent in a termination of parental rights proceeding to meaningfully participate as a right which requires similar protection by the court. *See*

*Lassiter,* 452 U.S. at 27. As such, a corresponding obligation on the part of the court to protect this right also exists, even though this judicial duty is not expressly documented in the statutes.

If the circuit court is to effectively discharge this duty, it must have the inherent authority to implement it. For a power to be inherent, it must be essential to the existence of the court and *necessary to the orderly and efficient exercise of the court's jurisdiction. Estate of Boyle v. Wickhem, Buell, Meier, Wickhem & Southworth, S.C.,* 134 Wis. 2d 214, 220, 397 N.W.2d 124, 126 (Ct. App. 1986). Examples of inherent powers are the power to summon witnesses, to administer oaths, to provide counsel for the indigent, and to discipline attorneys. *Id.* at 220, 397 N.W.2d at 126-27.

The parties represented to the juvenile court that F.C. had a right to attend the proceedings. The court had a legitimate interest in assuring that any order terminating F.C.'s parental rights was valid and would withstand future challenges. Even if the G.'s were willing to "chance" the future invalidity of the proceeding terminating F.C.'s parental rights *in absentia,* the court was not obligated to take a similar risk. If a court has the inherent authority to summon witnesses, *id.,* it surely must have such authority to assure the meaningful participation of a party whose constitutional rights to the care, companionship, custody and management of a child are sought to be terminated. This authority must extend, we conclude, to visiting the cost of the respondent's physical attendance upon the petitioners when the right to such attendance is taken as a given. Whether such cost, or a portion thereof, is properly transferred to

the petitioners rests upon a proper exercise of judicial discretion. We now turn to this question.

The record provided the juvenile court on this question was minimal. The only relevant information provided was that:  (1) the cost would be $3000 to $5000; (2) F.C. was incarcerated in Arizona; and (3) F.C. had been declared indigent for purposes of these proceedings and had been provided counsel by the public defender's office.

■■■■

In order to withstand appellate scrutiny, an exercise of discretion must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purposes of achieving a reasoned and reasonable determination. *Popp v. Popp,*  146 Wis. 2d 778, 801, 432 N.W.2d 600, 608 (Ct. App. 1988). We have already concluded that the juvenile court's determination was not premised upon legal error. Furthermore, the court considered the limited information provided by the parties on the question. In light of F.C.'s incarceration and apparent indigency, we cannot conclude that the court abused its discretion in requiring the G.'s to absorb the cost of F.C.'s transportation costs.

■■■■

Finally, we find no authority permitting the juvenile court to charge the non-party state or county for the transportation costs at issue in this case. The court's refusal to order the state or county to pay these costs was premised upon correct legal grounds. Therefore, no abuse of discretion as to this ruling occurred.

*By the Court.*—Order affirmed.