IN RE the INTEREST OF KYLE S.-G., a Child Under the Age of 18:

ODD S.-G., Petitioner-Appellant,

v.

CAROLYN S.-G., Respondent-Respondent-Petitioner.

Supreme Court

*No. 94–1965. Submitted on briefs April 6, 1995.—Decided June 27, 1995.*

(Also reported in 533 N.W.2d 794.)

For the respondent-respondent-petitioner there were briefs by *Richard J. Auerbach* and *Auerbach & Porter,* Madison.

For the petitioner-appellant there was a brief by *Judith Sperling Newton, Lynn J. Bodi, Barbara A. Neider* and *Stafford, Rosenbaum, Rieser & Hansen,* Madison.

WILLIAM A. BABLITCH, J. Odd S.–G. (Odd) filed a petition for the involuntary termination of his daughter Carolyn S.–G.'s (Cally) parental rights to her child, Kyle S.–G., Odd's grandchild. Cally seeks review of a decision of the court of appeals which held that in an action for the involuntary termination of parental rights, once abandonment, as that term is used in the statutes, has been established, the burden of proof shifts to the opposing parent to prove by clear and convincing evidence that the parent has not disassociated himself or herself from the child or relinquished responsibility for the child's care or well-being. We conclude that the burden of proof does shift to the parent once abandonment has been established, and that it is the parent's burden to show by a preponderance of the evidence that disassociation or relinquishment of responsibility for the child's care and well-being has not occurred. Accordingly, although we apply a different standard of proof to the burden held by the parent, we affirm the decision of the court of appeals and remand to the circuit court for a new trial.

The facts relevant to this review are undisputed. Cally is the mother of Kyle and the daughter of Odd and his wife Carolyn S.–G. While living in Waukesha near their daughter, Odd and his wife provided regular care for their grandson, Kyle. From the time of Kyle's birth on October 27, 1990, Odd and his wife were concerned about Cally's lifestyle and what they perceived as its negative impact on Kyle.

On November 8, 1992, shortly after Kyle's second birthday, Cally agreed to let her parents take Kyle with them for approximately a two-month vacation, to visit their other children living in Maine and Utah. While on vacation, Odd and Carolyn decided to relocate to warmer climates and moved into a home in Virginia

369

with Kyle. Odd and Carolyn never returned with Kyle to Wisconsin; Cally did not see or directly speak to Kyle between November 9, 1992 and November 9, 1993.

On December 28, 1993, Odd filed a petition for the involuntary termination of Cally's parental rights to Kyle. The petition alleged that Cally had abandoned Kyle for more than one year. *See* sec. 48.415(1)(a)3, Stats.[1] After a five-day trial, the court gave the jury the following instruction on the burden of proof with respect to abandonment: "The petitioner Odd S.–G. has the burden of convincing you to a reasonable certainty by evidence that is clear, satisfactory, and convincing that Cally has abandoned Kyle." The jury returned a verdict finding that Cally had not abandoned Kyle.

Odd brought a motion for judgment notwithstanding the verdict arguing, inter alia, that the circuit court erred in refusing to give the jury an additional instruction informing the jury that if Odd proved the basic elements of abandonment under a clear and convincing

---

[1] Section 48.415, Stats., provides in part:

**48.415 Grounds for involuntary termination of parental rights.** At the fact-finding hearing the court or jury may make a finding that grounds exist for the termination of parental rights. Grounds for termination of parental rights shall be one of the following:

(1) ABANDONMENT. (a) Abandonment may be established by a showing that:

. . .

3. The child has been left by the parent with a relative or other person, the parent knows or could discover the whereabouts of the child and the parent has failed to visit or communicate with the child for a period of one year or longer.

. . .

(c) A showing under par. (a) that abandonment has occurred may be rebutted by other evidence that the parent has not disassociated himself or herself from the child or relinquished responsibility for the child's care and well-being.

standard of proof, the burden of production and persuasion shifted to Cally to prove by a preponderance of the evidence that she had not disassociated herself from Kyle or relinquished her parental rights. The circuit court denied the motion.

Odd appealed, and the court of appeals reversed and remanded for a new trial on the basis that the jury was not properly instructed on the burden of proof with respect to abandonment. The court held that the jury should have been instructed that after Odd met his burden Cally had the burden of proving by clear and convincing evidence that she did not disassociate herself from Kyle or relinquish responsibility for his care or well-being. Cally seeks review from that decision.

The issue is whether a showing of abandonment under sec. 48.415(1)(a)3, Stats., shifts the burden of persuasion under sec. 48.415(1)(c) to Cally to prove that she had not disassociated herself from Kyle or that she had not relinquished responsibility for Kyle's care and well-being. If the burden of proof shifts to Cally, we must determine the standard to be applied to that burden. This presents a question of statutory interpretation which we review *de novo. Carlson & Erickson Builders, Inc. v. Lampert Yards, Inc.,* 190 Wis. 2d 651, 529 N.W.2d 905 (1995). The goal in statutory interpretation cases is to ascertain and give effect to the intent of the legislature. *Id.* When interpreting a statute, we first look to statutory language and if the meaning is clear, we will not look outside the statute. *Voss v. City of Middleton,* 162 Wis. 2d 737, 749, 470 N.W.2d 625 (1991). If the statute does not clearly set forth the legislative intent we will look at the history, scope, context, subject matter and object of the statute to aid in our construction. *Id.*

Section 48.415(1)(a)3, Stats., provides that abandonment may be established by a showing that: (1) the child has been left by the parent with a relative or other person; (2) the parent knows or could discover the whereabouts of the child; and (3) the parent has failed to visit or communicate with the child for a period of one year or longer. Section 48.31(1), Stats., provides that the party seeking to terminate parental rights must prove these basic facts by clear and convincing evidence. Once these facts are established, sec. 48.415(1)(c) provides that the showing may be rebutted by other evidence that the parent has not disassociated himself or herself from the child or relinquished responsibility for the child's care or well-being. That is, the natural parent may rebut the presumption of abandonment with evidence of nondisassociation. *See In Interest of T.P.S.,* 168 Wis. 2d 259, 266, 483 N.W.2d 591 (Ct. App. 1992).

Although Cally acknowledges that the court of appeals in *In Interest of T.P.S.* recognized that sec. 48.415, Stats., creates a presumption of abandonment, she disagrees with that conclusion. Assuming a presumption exists, however, she argues that it is a legal presumption akin to a prima facie showing which does not shift the burden of persuasion but merely requires a fact-finder to adjudge that a child has been abandoned absent evidence to the contrary. She contends that once she meets the burden of production and introduces evidence that she has not disassociated herself from Kyle or relinquished responsibility for his care and well-being, the presumption of abandonment vanishes. At that point, Odd must persuade the jury under a clear and convincing burden of proof that Cally did disassociate herself from Kyle and that the facts establish abandonment. In Cally's view she never

bears the burden of persuasion; Odd retains the burden of proving abandonment by clear and convincing evidence at all times.

On the other hand, Odd contends that once he establishes the basic facts of abandonment and persuades the fact-finder of their actual existence, the burdens of both production and persuasion shift to Cally. According to Odd, Cally must prove that she did not disassociate herself from Kyle or relinquish responsibility for Kyle's care and well-being.

A termination of parental rights (TPR) action based upon a showing of abandonment under 48.415(1)(a)3, Stats., creates a rebuttable presumption of abandonment: sec. 48.415(1)(a)3 provides that a showing of three basic facts establish abandonment and sec. 48.415(1)(c) provides that the showing of abandonment may be rebutted by evidence that Cally has not disassociated herself from Kyle or relinquished responsibility for his care and well-being. However, sec. 48.415(1)(c) is silent with respect to the effect of the presumption on the opposing party. We conclude that because the statute is silent and because a TPR action is civil in nature, *see In re Termination of Parental Rights to M.A.M.,* 116 Wis. 2d 432, 442, 342 N.W.2d 410, 415 (1984), the presumption is governed by sec. 903.01, Stats., which addresses presumptions in civil actions.

Section 903.01 provides:

> **Presumptions in general.** Except as provided by statute, a presumption recognized at common law or created by statute, including statutory provisions that certain basic facts are prima facie evidence of other facts, imposes on the party relying on the presumption the burden of proving the basic

373

facts, but once the basic facts are found to exist the presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence.

This rule of evidence recognizes that once established, a presumption shifts the burden of production and persuasion to the party opposing the presumption. *See* Judicial Council Committee Notes, 1974, sec. 903.01, 59 Wis. 2d R41, R42 ([the presumption] shift[s] the burden of persuasion as well as the burden of producing evidence. The section effectuates a major change in Wisconsin law.).

The operation of sec. 903.01, Stats., works as follows. The party relying on the presumption "has the burden of proving the basic facts." 7 DANIEL D. BLINKA, WISCONSIN PRACTICE sec. 301.4 at 52 (1991). The term "burden" referred to in the statute refers to both the burdens of production and persuasion. Once the basic facts are found to exist, i.e., the petitioner has both produced evidence of those facts and convinced the jury of their existence, the burdens of persuasion and production shift to the party opposing the presumption. That party then bears the burden of proving "that the nonexistence of the *presumed* facts is more probable than its existence." *Id.*

As applied to this case then, sec. 903.01, Stats., requires that once Odd establishes the basic facts of abandonment by clear and convincing evidence, i.e., meets both the burden of production and persuasion, the burden shifts to Cally. Cally must rebut the evidence by producing evidence that she did not disassociate herself from Kyle or relinquish responsi-

bility for Kyle's care or well-being, and then by persuading the jury that that evidence actually exists.

Cally contends that sec. 903.01, Stats., does not apply to this case because the presumption created in sec. 48.415(1)(c), Stats., is a presumption of law as opposed to a presumption of fact. Whereas a presumption of fact governed by sec. 903.01 shifts the burden of persuasion, a presumption of law simply requires a fact-finder to find abandonment unless evidence is introduced to the contrary. She illustrates sec. 903.01's "ill-fit" to this case by directing us to the fact that sec. 903.01 applies when the person opposing the presumption has to prove that the nonexistence of the presumed fact is more probable than its existence. Cally posits that if the presumed fact under sec. 48.415(1)(a)3, Stats., is "abandonment", she should be proving the nonexistence of "abandonment". However, under sec. 48.415(1)(c) she is required to show evidence that she has not "disassociated" herself from Kyle, not that she has not "abandoned" him.

Further, Cally contends that applying sec. 903.01, Stats., and shifting the burden of persuasion to her would violate the due process requirements set forth in *Santosky II v. Kramer,* 455 U.S. 745, 754–55 (1982). *Santosky* held that the party seeking to terminate parental rights bears the burden of proving his allegations by clear and convincing evidence. Cally contends that if she has to prove nondisassociation by any standard, Odd's burden is effectively lowered below a clear and convincing standard.

We find little merit in her arguments. As to her first argument, evidence of nondisassociation, although potentially distinct from the three factual conclusions needed to create the presumption of abandonment, goes directly to rebutting the factual

presumption of abandonment. Early drafts of sec. 48.415, Stats., illustrate this: in the early drafts of the statute, abandonment was defined in terms of when a "parent has deserted a child with the intent to disassociate himself or herself from the child and to relinquish responsibility for the care and well-being of the child." *See* Drafting record, Laws 1979, ch. 330. Similarly, the analysis of the legislative reference bureau in those drafts originally stated, "[a]bandonment may be presumed wherever the child is found in circumstances which manifest that the parent has left the child with the clear intent to disassociate himself or herself from the child and to relinquish responsibility for the child." *Id.* Evidence that Cally has not disassociated herself from Kyle, i.e., evidence, for example, that she has continued to support Kyle or has written him letters and cards that were not received, goes directly to show that she has not abandoned him.

The court of appeals recognized in *T.P.S.,* 168 Wis. 2d at 266, that evidence of nondisassociation goes directly to disproving abandonment. In *T.P.S.,* the court rejected an argument that the failure of a father to communicate with a child for a period of one year established abandonment as a matter of law. The court stated that "[t]he father's failure to have contact with his child ... only establishes a *presumption* of abandonment. . . . If [the evidence of nondisassociation introduced by the father] is believed, the fact-finder could conclude that, pursuant to sec. 48.415(1)(c), Stats., the father rebutted the presumption of abandonment. . . ." *Id.*

As to Cally's second argument, *Santosky* requires Odd to prove abandonment by clear and convincing evidence. *Santosky* does not speak to rebuttal evidence, it simply makes clear that Odd bears the burden of

proving his allegations by clear and convincing evidence and that the risk of erroneously terminating parental rights must be lower than the risk of erroneously not terminating parental rights. 455 U.S. at 754–755. As long as Odd establishes abandonment by clear and convincing evidence and retains a higher burden of proof, the due process requirements set forth in *Santosky* are met.

Having determined that the presumption in sec. 48.415, Stats., shifts the burden to Cally to prove evidence that she did not disassociate herself from Kyle or relinquish responsibility for his care and well-being, we must determine the standard of proof to be applied to her burden. Section 48.415, Stats., is silent about the burden of proof with respect to rebutting the presumption of abandonment. Further, no statutory history exists on this specific issue.

Odd contends that since sec. 903.01, Stats., is applicable to sec. 48.415(1), Stats., we may look to the standard evinced in sec. 903.01 and the Judicial Committee notes that accompany the statute. The statute requires the presumption to be rebutted by evidence which proves that "the nonexistence of the presumed fact is more probable than its existence." Section 903.01. He contends that the Judicial Council Committee's Note—1974, 59 Wis. 2d at R42, which accompanies that statute, makes clear that this presumption can only be overcome by evidence of equal weight. *See Kruse v. Horlamus Industries,* 130 Wis. 2d 357, 365–66, 387 N.W.2d 64 (1986). Accordingly, since Odd must prove abandonment by clear and convincing evidence, he contends that Cally must similarly prove evidence to the contrary by clear and convincing evidence.

We disagree with Odd and conclude that the general rules suggested in the Judicial Council Committee's Note with respect to the appropriate burdens of proof in most cases, should not apply to TPR proceedings because of the unique constitutional concerns implicated by them. It has been reiterated by this court and the United States Supreme Court that the power to terminate parents rights is an awesome power. When someone seeks to terminate a parent's right to " 'the companionship, care, custody, and management of his or her children,' " they seek to infringe on "an interest far more precious than any property right." *Santosky,* 455 U.S. at 758–59 (Citations omitted). " 'A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one.' " *Id.* at 759.

For this reason, the Supreme Court has concluded that the due process rights of parents in TPR actions require the party seeking to terminate parental rights to support its allegations by clear and convincing evidence. The function of a standard of proof is to instruct the fact-finder as to the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of proceeding. *Santosky,* 455 U.S. at 754 *(quoting Addington v. Texas,* 441 U.S. 418, 423 (1979)). The court in *Santosky* determined that the use of a clear and convincing standard in TPR proceedings adequately conveys to the jury the level of certainty needed to determine that grounds for termination exist. That is, the clear and convincing standard conveys to the jury that the risk of erroneously terminating parental rights must be lower than the risk of erroneously not terminating them. The court stated: "The individual should not be asked to share equally with society the risk of error when the possible injury

to the individual is significantly greater than any possible harm to the state." *Id.* at 768 (citing *Addington,* 441 U.S. at 427).

If we were to adopt Odd's theory and conclude that Cally bore the burden of proving nondisassociation by clear and convincing evidence, the risk to Odd and Cally in the termination proceeding would be equally allotted; Cally's risk of losing Kyle would be equal to Odd's risk of not being able to establish grounds for termination. This result would be directly contrary to the mandates of *Santosky. Santosky* held that this is constitutionally intolerable because of the precious rights involved: "For the child, the likely consequence of an erroneous failure to terminate is preservation of an uneasy status quo. . . . For the natural parents, however, the consequence of an erroneous termination is the unnecessary destruction of their natural family." *Id.* at 765–66.

█

For this reason, we conclude that the appropriate burden of proof to apply to an opposing parent in TPR proceedings under sec. 48.415(1)(a)3, Stats., is preponderance of the evidence. We note that other state courts have come to similar decisions with respect to the level of proof needed by parents to rebut evidence at or after a termination proceeding. For example, the Supreme Court of Vermont in *In re T.E.,* 582 A.2d 160, 162 (Vt. 1990), held that a parent seeking to modify a termination order which was supported by clear and convincing evidence, should bear a lower burden of proof:

> [D]ue process requires that a higher standard—clear and convincing evidence—be imposed on the State whenever it seeks permanently to sever what has been described as "[t]he fundamen-

tal liberty interest of natural parents in the care, custody, and management of their child." . . . If a parent is able, however, to show by a preponderance of the evidence that there has been a substantial change in circumstances and that the best interests of the child require an amendment, modification or vacation of a termination order, . . . the State no longer can maintain the claim that clear and convincing evidence exists to justify the severance of parental rights. *Id.*

Similarly, the Kansas Court of Appeals in *In the interest of L.D.B., C.C.B., and V.J.B.,* 891 P.2d 468, 471 (Kan. App. Ct. 1995), held that when a parent rebuts a showing of parental unfitness, he or she must only prove the rebuttal evidence under a preponderance of the evidence standard. The court stated:

Given the fundamental rights at stake in a termination of parental rights proceeding, we believe a lower standard of proof is required. When faced with a presumption of unfitness . . . the parent should be able to successfully rebut that presumption by showing parental fitness by a preponderance of the evidence.

An analysis similar to that in the above cases is required here. If Cally establishes by a preponderance of the evidence that she did not disassociate herself from Kyle or relinquish responsibility for his care and well-being, Odd can no longer claim that there is clear and convincing evidence of abandonment, and his petition must necessarily fail.

In sum, we conclude that the presumption of abandonment under sec. 48.415(1)(a)3, Stats., shifts the burden of production and persuasion to Cally to prove by a preponderance of the evidence that she has not

disassociated herself from Kyle or relinquished responsibility for his care or well-being. Accordingly, although we apply a different standard of proof to rebuttal evidence, we affirm the decision of the court of appeals and remand to the circuit court for a new trial.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J.*(dissenting)*. The majority opinion, like the court of appeals decision, begins with the assumption that sec. 48.415, Stats. 1993–94, creates a rebuttable presumption. In other words, both opinions determine that if the petitioner proves the elements set forth in sec. 48.415(1)(a)1, 2, or 3, abandonment must be presumed unless rebutted.

Cally argues that sec. 48.415 "does not create a presumption. Instead, the presumption was created by the Court of Appeals in *Interest of T.P.S.,* [168 Wis. 2d 259, 483 N.W.2d 591 (Ct. App. 1992)]." I agree with Cally that sec. 48.415 does not create a presumption.

First, the word "presumption," or any variation of that word, is conspicuously absent from sec. 48.415. In contrast, the legislature has used the word "presumption" or its variations in several provisions of ch. 48. *See, e.g.,* sec. 48.18(6) ("[i]n the absence of evidence to the contrary, the judge shall presume that it would be contrary to the best interests of the child . . . to hear the case if the child" allegedly violated the criminal statutes on or after the child's 16th birthday); secs. 48.432(8), 48.433(10) and 48.981(4) ("good faith . . . shall be presumed"); sec. 48.839(3)(d) ("[t]he court shall presume that the instrument" has a specified effect "unless there are substantial irregularities on the face of the document"); sec. 48.85(2) ("guardian [ad litem]'s

381

recommendation shall be presumed to be in the best interests of the child unless the fair preponderance of the credible evidence is to the contrary").

A search of the Wisconsin Statutes, 1993–94, reveals that the legislature has used the words presume, presumes, presumed, presumption, presumptions, presumptive, and presumptively 490 times. The legislature appears not to hesitate to create a presumption by express language when it so intends.

Second, the legislative history supports the conclusion that the legislature did not intend to establish a presumption. An early version of 1979 Assembly Bill 656 which became ch. 330, Laws of 1979, established a "presumption" of abandonment as a ground for terminating parental rights. This early version created sec. 48.415(2) to read as follows: "Grounds for termination of parental rights shall be one of the following: . . .. (2) Abandonment. *A presumption of abandonment,* which may be rebutted by competent evidence . . . may be established by a showing that . . . the child has been removed from the parent's home . . . and the parent for a period of 6 months or longer has failed to visit or communicate with the child . . .." Drafting record, Laws of 1979, ch. 330, Wisconsin State Law Library microfiche (emphasis added). The Legislative Reference Bureau Analysis of this early version of Assembly Bill 656 indicated that the bill created a presumption. *See* majority op. at 377.

The legislature rejected this early version of the bill. Rather, the legislature adopted a substantially different bill which made no mention of a presumption. The Legislative Reference Bureau Analysis of this bill also omitted any reference to a presumption. Thus, the legislative history evidences that the legislature dis-

carded the presumption approach to abandonment in favor of a different tack.

Third, sec. 48.415(1)(a) does not fit comfortably into the framework of sec. 903.01 governing presumptions. In a true presumption, "the presumed fact" is to be rebutted by evidence that the presumed fact does not exist. According to the majority, the presumed fact of sec. 48.415(1) is abandonment, and it is acceptable that the evidence to rebut that "presumed fact" is not nonabandonment, but rather nondisassociation. Relying on legislative history, the majority concludes that evidence of nondisassociation "goes directly to rebut the factual presumption of abandonment." Majority op. at 376–77. This is an accurate reading of part of the legislative history, the part relating to the proposal the legislature rejected. The repudiated version of the bill defined abandonment to include a parent's "intent to disassociate himself or herself from the child." Drafting record, Laws of 1979, ch. 330, Wisconsin State Law Library microfiche. The statute, however, does not so define abandonment. Thus, evidence that a parent did not disassociate from a child may be different from evidence of nonabandonment.

Fourth, the notion that sec. 48.415(1) embodies a presumption was brought into the law of involuntary termination of parental rights in *In Interest of T.P.S.*, 168 Wis. 2d 259, 483 N.W.2d 591 (Ct. App. 1992), and that case stands alone in suggesting that sec. 48.415 creates a presumption. The court of appeals in *T.P.S.* was not asked to determine if sec. 48.415 created a presumption.[1] It invoked the word "presumption" with

[1] The primary issue in *T.P.S.* involved whether the one-year period under sec. 48.415(1)(a)3 must immediately precede the filing of the termination petition. The court of appeals concluded that the petition need not immediately follow the one

no discussion of presumptions or the consequences of such a characterization, and with no reference to sec. 903.01. None of the briefs in *T.P.S.* raised sec. 48.415(1)(c) or discussed the issue of presumption.[2]

Fifth, unless the legislature clearly establishes a presumption, I think the court should assume that the legislature did not intend to establish a presumption, especially when a presumption can operate against a party with a significant constitutional right at risk. The concept of presumptions has plagued courts and scholars for years primarily because the law uses the word "presumption" in many different ways.[3] As a leading text explains, "one ventures the assertion that 'presumption' is the slipperiest member of the family of legal terms, except its first cousin, 'burden of proof.'" *McCormick on Evidence,* sec. 342 at 449 (4th ed. 1992). Professor Lansing has written in a similar vein that "the domain of presumptions has been called 'a place fraught with danger,' 'an impenetrable jungle,' 'a mist laden morass'—where more than one academician has

---

year of alleged abandonment. The court of appeals only cursorily discussed sec. 48.415(1)(c), the subsection that allows a parent to rebut evidence of abandonment.

[2] The Civil Jury Instruction Committee apparently has not concluded that sec. 48.415(1) creates a presumption. The committee did not in its 1994 revision of Wis. JI-Civil 7042 (relating to involuntary termination of parental rights on the basis of abandonments) refer to *T.P.S.* and did not treat sec. 48.415(1)(a)3 as if it created a presumption.

For examples of jury instructions when presumptions are involved, see Wis. JI-Civil Nos. 349–354.

[3] Charles V. Laughlin, *In Support of the Thayer Theory of Presumptions,* 52 Mich. L. Rev. 195, 196–207 (1953).

For discussions of presumptions and burdens of proof, see *Symposium on Presumptions and Burdens of Proof,* 17 Harv. J.L. & Pub. Pol'y 613 (1994).

been known to lose his way and, once returned, is never quite the same."[4]

On the basis of the factors set forth above, I conclude that the legislature did not intend to establish a presumption in sec. 48.415. This conclusion only partially resolves this case. It remains to be decided which party has the burden of persuasion on the issue of disassociation. No provision in ch. 48 expressly assigns the burden of persuasion under sec. 48.415(1)(c) either to the person petitioning for termination of parental rights or to the parent objecting to the termination.

I conclude that the parent has the burden of producing evidence to place disassociation in issue and the petitioner must prove by clear and convincing evidence that the parent did disassociate from the child. I reach this conclusion based primarily on the significant constitutionally protected right of parents to rear their children. The majority imperils that right by shifting the burden of persuasion to a parent, with a presumption bound to result in confusing jury instructions allotting different burdens of persuasion on different subjects to different parties. The majority opinion has provided no persuasive reason for creating this dynamic. Furthermore, requiring the petitioner to maintain the burden of proof by clear and convincing evidence does nothing to endanger the best interest of the child at issue. Accordingly, I cannot join the majority opinion.

For the reasons set forth, I dissent.

---

[4] Ronald B. Lansing, *Enough is Enough: A Critique of the Morgan View of Rebuttable Presumptions in Civil Cases,* 62 Or. L. Rev. 485, 485 (1983) (note omitted) (discussing the difficulties presented at trial by a rebuttable presumption).