Carlson & Erickson Builders, Inc., Plaintiff-Respondent-Cross-Appellant,†

v.

Lampert Yards, Inc., Portside Properties, Inc., and Door County Material Specialists, Inc., Defendants-Appellants-Cross-Respondents.

Court of Appeals

*No. 93–0195. Submitted on briefs November 23, 1993.—Decided March 22, 1994.*

(Also reported in 515 N.W.2d 305.)

†Petition to review granted.

222

On behalf of plaintiff-respondent-cross-appellant Lampert Yards, Inc., the cause was submitted on the briefs of *Tom Rusboldt* of *Nash, Spindler, Dean & Grimstad* of Manitowoc. On behalf of plaintiffs-respondents-cross-appellants Portside Properties, Inc., and Door County Material Specialists, Inc., the cause was submitted on the briefs of *William J. Ewald* of *Denissen, Kranzush, Mahoney & Ewald, S.C.* of Green Bay.

On behalf of plaintiff-respondent-cross-appellant, the cause was submitted on the briefs of *Robert L. Binder, William M. Conley* and *Lynn J. Splitek* of *Foley & Lardner* of Madison.

Before Cane, P.J., LaRocque and Fine, JJ.

LaROCQUE, J. The defendants in an antitrust suit appeal an order partially denying their challenge to a jury verdict in favor of the plaintiff, Carlson & Erickson Builders, Inc. (C&E), a general building contractor. The jury found that Lampert Yards, Inc., a lumber supplier, and Portside Properties, Inc.,[1] a contractor in competition with C&E, violated the unfair trade practice provisions of § 133.05(1) and (2), STATS.[2]

---

[1] Door County Material Specialists, Inc., Portside's corporate purchaser was also a named defendant. For purposes of discussing the issues raised on appeal, we refer to Portside and DCMS collectively as Portside.

[2] Section 133.05, STATS., provides in part:

Secret rebates; unfair trade practices. (1) The secret payment or allowance of rebates, refunds, commissions or unearned discounts, whether in the form of money or otherwise, or the secret extension to certain purchasers of special services or privileges not extended to all purchasers purchasing upon like terms and conditions, such payment, allowance or extension injuring or tending to injure a

Specifically, the jury found that the defendants engaged in the secret payment of unearned discounts, special services or privileges not extended to all purchasers upon like terms and conditions.[3] The jury also found that Lampert violated the provisions of § 133.04,[4] by engaging in price discrimination between

competitor or destroying or tending to destroy competition, is an unfair trade practice and is prohibited.

(2) No person may induce, solicit or receive anything of value which is prohibited under sub. (1).

(3) Any person knowingly violating this section may be fined not more than $25,000 or imprisoned in the county jail for not more than one year or both.

[3] The jury verdict inquired only into the acts of the seller, Lampert, and not the acts of the buyer, Portside. Section 133.05 (2), STATS., sets forth the prohibited conduct of a buyer. The jury was not asked whether Portside *induced, solicited or received* anything of value which is prohibited under sub. (1) of § 133.05.

Despite this apparent discrepancy, Portside does not reply to C&E's argument on appeal:

Portside conceded that if the jury found that Lampert had extended an unearned discount or special privilege to Portside within the meaning of sec. 133.05(1), then Portside "induced, solicited or received" this benefit under sec. 133.05(2). That is why the jury was not even asked if Portside induced, solicited or received the unearned discount or secret privilege. Having failed to object to the jury instruction below—indeed, having acquiesced in the instructions which failed to require a showing that receipt be "knowing"—Portside has waived any claim to the contrary on appeal. *See Segall v. Hurwitz*, 114 Wis. 2d 471, 489, 339 N.W.2d 333, 342 (Ct. App. 1983) (noting that court will "normally . . . not review an issue raised for the first time on appeal").

[4] Section 133.04, STATS., provides in part:

Price discrimination; intent to destroy competition. (1) No person may discriminate, either directly or indirectly, in price between different purchasers of commodities of like grade and quality, for the purpose or intent of injuring or destroying competition in any level of competition or any person engaged therein.

different purchasers with intent to injure or destroy competition. The jury found that Lampert and Portside did not enter into an agreement to restrain trade as prohibited by § 133.03. The jury awarded damages in the sum of $177,100. Before computing C&E's treble damages as provided in § 133.18(1)(a),[5] the trial court entered a remittitur order, granting C&E the option of a reduced verdict of $67,907.65 (trebled) or a new trial on damages.

The defendants argue that the trial court erred by instructing the jury to apply the ordinary burden rather than the middle burden of proof, and that the evidence was insufficient to sustain the verdict. Portside separately argues: (1) § 133.05(2), STATS., requires proof that it *knowingly* received benefits prohibited by § 133.05(1), STATS.; and (2) the statute is unconstitutionally vague. Lampert separately argues: (1) § 133.05 violates the constitutional equal protection and the commerce clause; (2) "meeting competition" and "cost justification" defenses were erroneously denied as to the claim under § 133.05; and the "functional discount" defense was erroneously denied as to the claim under § 133.04; and (3) the trial court erred by denying its motions for summary judgment, directed verdict and judgment notwithstanding the verdict.

(2) Any person violating this section may be fined not more than $25,000 or imprisoned in the county jail for not more than one year or both.

[5] Section 133.18(1)(a), STATS., provides:

Treble damages; statute of limitations. (1) (a) Except as provided under par. (b), any person injured, directly or indirectly, by reason of anything prohibited by this chapter may sue therefor and shall recover threefold the damages sustained by the person and the cost of the suit, including reasonable attorney fees. Any recovery of treble damages shall, after trebling, be reduced by any payments actually recovered under s. 133.14 for the same injury.

We conclude that the defendants were entitled to the middle burden of proof. Further, although Portside initially waived the issue, *see* note 3, because the matter must be retried, C&E must prove that Portside knew that any unearned discounts, special services or privileges it received were secret and that they were not extended to all purchasers on like terms and conditions. We reject the defendants' remaining arguments. Because we remand for a new trial, we also need not address C&E's cross-appeal challenging the remittitur order. We therefore reverse and remand for a new trial on both liability and damages.[6]

## BURDEN OF PROOF IN ANTITRUST CLAIMS

■

We are convinced that civil damage claims alleging violations of § 133.04 and 133.05, STATS., require the "middle" standard of proof: clear, satisfactory and convincing evidence. Over defense objection, the trial court applied the lower or "ordinary" burden.[7]

C&E concedes an absence of controlling Wisconsin precedent, but notes that ch. 133, STATS., is drawn

---

[6] We agree with Portside's uncontested contention that it can be retried only as to the allegation that it violated § 133.05, STATS. The jury exonerated Portside of making a contract with Lampert in restraint of trade under § 133.03. Absent any conspiracy by a buyer, the prohibition against price discrimination under § 133.04 applies on its face only to a seller.

[7] WIS JI—CIVIL 200 sets forth the "ordinary" burden of proof:

> The burden of proof . . . is to satisfy you to a reasonable certainty, by the greater weight of the credible evidence . . . .
>
> By the greater weight of the credible evidence is meant evidence which when weighed against evidence opposed to it has more convincing power. Credible evidence is evidence which in the light of reason and common sense is worthy of belief.

largely from federal antitrust law, and that state courts will "look to the federal courts for guidance" where "Wisconsin case law [is] scarce." *Independent Milk Producers Co-op v. Stoffel*, 102 Wis. 2d 1, 6-7, 298 N.W.2d 102, 104 (Ct. App. 1980).

Wisconsin case law on the burden in civil actions involving crime-like torts is not scarce. That law consistently demonstrates a special interest in protecting defendants so accused, or those who face enhanced civil liability damages. We require the middle burden where there may be "a finding against a defendant who will be subjected to the stigma attached to the commission of certain classes of acts." *Wangen v. Ford Motor Co.*, 97 Wis. 2d 260, 300, 294 N.W.2d 437, 458 (1980) (requiring the middle burden in punitive damage claims) (quoting *Layton School of Art & Design v. WERC*, 82 Wis. 2d 324, 362-63, 262 N.W.2d 218, 236 (1978)). This requirement extends to "civil actions which involved fraud, undue influence, criminal acts, reformation, mutual mistakes, and others, which public policy requires to be proved by evidence which is clear, satisfactory and convincing." *Madison v. Geier*, 27 Wis. 2d 687, 692, 135 N.W.2d 761, 763 (1965).[8]

---

WIS JI—CIVIL 205 sets forth the "middle" burden of proof: "The burden of proof . . . is . . . to convince you to a reasonable certainty by evidence that is clear, satisfactory, and convincing . . . ."

[8] Wisconsin's pattern jury instructions also suggest use of the middle burden in civil conspiracy claims, WIS JI—CIVIL 2800; intentional interference with a contractual relationship, WIS JI—CIVIL 2780; bad faith claims against insurance companies, WIS JI—CIVIL 2761; and misrepresentation claims, WIS JI—CIVIL 2401-2402. The supreme court has recognized the instruction committee's work as persuasive. *State v. Gilbert*, 115 Wis. 2d 371, 379, 340 N.W.2d 511, 515-16 (1983).

In respect to the preceding standards, ch. 133, STATS., provides for treble damages and, to that extent, it is penal and not remedial in nature. *Open Pantry Food Marts v. Falcone*, 92 Wis. 2d 807, 811, 286 N.W.2d 149, 151 (Ct. App. 1979). The choice of a given standard of proof "serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Addington v. Texas*, 441 U.S. 418, 423 (1979). Unfair trade practices are punishable as criminal conduct. Section 133.04 deals with an "intent of injuring or destroying competition." Section 133.05 proscribes "an unfair trade practice" of "secret payment[s] . . . "tending to injure a competitor or . . . tending to destroy competition.. . ." They subject a civil violator to a stigma no less dishonorable than other tortious conduct that must be proven to an elevated degree of certainty. These defendants must therefore be held liable only upon a finding that their actions were proven by evidence that is clear, satisfactory and convincing. While this may be inconsistent with federal law,[9] to hold otherwise would render the law of Wisconsin internally inconsistent.

## ELEMENT OF KNOWLEDGE IN § 133.05, STATS.

Portside contends that failure to require a buyer *knowingly* induce, solicit or receive secret rebates, not extended to all purchasers purchasing upon like terms and conditions, permits the imposition of treble dam-

[9] The federal courts do not require middle burden protection in civil actions regulating commerce, even where fraud is involved. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389 (1983) (claims of fraudulent misrepresentation under the federal Securities Exchange Act may be proven by a preponderance of the evidence).

ages upon an innocent person. C&E responds that Portside abandoned this issue by failing to raise it in the trial court. It also asserts that C&E's contention is contrary to the plain language of the statute. While we agree that a waiver occurred, the same issue will no doubt arise on remand. We therefore address it.

A statute is ambiguous when it is capable of being understood by a reasonably well-informed person in either of two or more senses. *Kearney & Trecker Corp. v. DOR*, 91 Wis. 2d 746, 753-54, 284 N.W.2d 61, 65 (1979). Even where a statute appears unambiguous on its face, it can be rendered ambiguous by its interaction and its relation to other statutes. *State v. White*, 97 Wis. 2d 193, 198, 295 N.W.2d 346, 348 (1980). We conclude that § 133.05(2), STATS., is ambiguous. Subsection (3) of the statute states that any person "knowingly" violating its terms may be criminally prosecuted, while subsec. (2) contains no reference to knowledge or state of mind. Arguably this denotes, as C&E contends, that the legislature contemplated the requirement of knowledge only in criminal prosecutions.

The general legislative intent expressed in § 133.01, STATS., however, suggests otherwise. That intent is to prohibit unfair business practices.[10] A

---

[10] Section 133.01, STATS., provides:

Legislative intent. The intent of this chapter is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory business practices which destroy or hamper competition. It is the intent of the legislature that this chapter be interpreted in a manner which gives the most liberal construction to achieve the aim of competition. It is the intent of the legislature to make competition the fundamental economic policy of this state and, to that end, state regulatory agencies shall regard the public

buyer who receives prohibited benefits, innocent of any knowledge that the seller is so acting, is not engaged in an unfair trade practice. Further, for much the same reason that the penal damages of § 133.18 require a greater than ordinary burden of proof, we conclude that a buyer must know that unearned discounts, special services or privileges are secret and not extended to all purchasers purchasing on like terms and conditions. Finally, the nature of the practices prohibited by § 133.05, suggest that proof of the buyer's knowledge is no great barrier to a civil claim. Ordinarily, in the process of proving secret activities, the same evidence would circumstantially demonstrate the necessary knowledge.[11]

## SUFFICIENCY OF THE EVIDENCE

The defendants argue that the evidence was insufficient to support the verdict. Because we remand for a new trial, we will not address the evidence in detail. The trial court instructed the jury that the elements of

interest as requiring the preservation and promotion of the maximum level of competition in any regulated industry consistent with the other public interest goals established by the legislature.

[11] C&E's evidence would tend to demonstrate that in this case. C&E refers to a public meeting between Lampert and its contractors where Lampert "falsely told contractors that all contractors received the same discount." C&E cites evidence that other contractor prices were left openly on display on a front counter except for Portside's, which were kept in Lampert's back offices, even though each was used on a daily basis. C&E refers to evidence that Lampert furnished Portside with lists reflecting Lampert's charges to other contractors on a competitively bid project, ostensibly to give Portside a competitive advantage.

price discrimination require that (1) the commodities involved in the sales being compared were of like grade and quality; (2) the prices charged were discriminatory, that is, different; (3) the price difference was for the purpose or with the intent of injuring competition or a competitor; and (4) the discriminatory pricing caused the plaintiff injury. The court instructed that the elements of proof of a secret discount are: (1) the payment or allowance of unearned discounts, special services or privileges; (2) made in secret; and (3) that these acts injure or tend to injure a competitor or to destroy competition.

The transcript of the nine-day jury trial reveals extensive evidence on each of the preceding elements. Further, based upon our examination of the record, the trial court properly denied defense motions for summary judgment, directed verdict and judgment notwithstanding the verdict.

## DEFENSES AVAILABLE TO LAMPERT

■

The trial court instructed the jury on a "meeting the competition" defense and a "cost justification" defense relating to the § 133.05, STATS., claim, and a "functional discount" defense as to the § 133.04 claim. Lampert argues that each of these defenses is equally applicable to both statutes. C&E responds that even if this were true, any error would be harmless because the jury rejected the defenses in relation to the claims to which they were given. Because Lampert's argument is unsupported by authority and otherwise inadequately briefed, we decline to review it. *See In re Estate of Balkus v. Security First Nat'l Bank,* 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593, 598 n.5 (Ct. App. 1985).

## VOID FOR VAGUENESS AND OTHER CONSTITUTIONAL ARGUMENTS

▮▮

Portside argues that § 133.05, STATS., is void because "unearned discounts" and "like terms and conditions" are not defined. A statute is presumptively constitutional, and a party challenging the act has the burden of establishing unconstitutionality beyond a reasonable doubt. *Madison v. Hyland, Hall & Co.*, 73 Wis. 2d 364, 385, 243 N.W.2d 422, 433 (1976). The void for vagueness concept rests upon the constitutional principle that procedural due process requires fair notice and proper standards for adjudication. *State ex rel. Hennekens v. River Falls Police & Fire Comm'n*, 124 Wis. 2d 413, 420, 369 N.W.2d 670, 674 (1985). If the statute is so obscure that persons of common intelligence must necessarily guess as to its meaning and differ as to its applicability, it is unconstitutional. *State v. Zwicker*, 41 Wis. 2d 497, 507, 164 N.W.2d 512, 517 (1969). Where a great and varied number of offenses may come within a statutory category, they defy a precise statutory definition. *See id.* Impossible standards of specificity are not required. *Id.* (citing *Jordan v. De George*, 341 U.S. 223, 231 (1951)). Moreover, the trial court gave the defendants' requested instruction as follows:

> Defendants have raised the functional discount defense to the unearned discount claim. "Functional discounts" are given by a seller to a buyer based on the buyer's performance of marketing functions for the seller's product. In this case, Portside or DCMS claim that they received the discounts because they performed certain services, including design functions, drafting of blueprints, preparation of material takeoff lists, materials cost estimates,

coordinating of deliveries of building materials to construction sites, and also that they assumed the risks of error in estimating the materials necessary for construction projects, which other contractors, including the plaintiff, Carlson & Erickson, ordinarily relied on Lampert to perform.

The jury was informed that if the lower price granted to Portside was justified as a functional discount, then the jury must find for the defendants on the unearned discount claim. We conclude that Portside fails to demonstrate that the statute denies due process and is thereby void for vagueness.

Lampert raises constitutional challenges relating to the commerce clause and equal protection. Its arguments are unpersuasive, and we reject them. The remittitur order is reversed and the matter remanded for a new trial consistent with this opinion.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions. No costs on appeal.

CANE, P.J. (*concurring*). I concur only for the purpose of urging that the courts reconsider having different burdens of proof in civil cases. As a former trial judge, I presided over hundreds of civil jury trials, and I seriously doubt that any juror can realistically tell the difference between the "ordinary" and "middle" burden of proof. Under the "ordinary" burden of proof, the jury is told: "The burden of proof . . . is to satisfy you to a reasonable certainty by the greater weight of the credible evidence . . . ." WIS J I—CIVIL 200. In comparison, under the "middle" burden of proof, the jury is told: "The burden of proof . . . is . . . to convince you to a

reasonable certainty by evidence that is clear, satisfactory, and convincing . . . ." WIS J I—CIVIL 205. Arguably, one could contend the "ordinary" burden of proof is the higher standard.

As lawyers and judges, we somehow perceive a difference between the burden of proofs. Realistically, I say there is no difference. The important differences are the elements to be proven for liability, not the burden of proof. For those who face an enhanced civil liability or who will be subjected to a stigma if found liable, we require additional elements to be proven, such as knowledge, bad faith, conspiracy, intentional acts or misrepresentations. That should be sufficient to distinguish the various forms of civil liabilities. We should not continue to engage in this subtle difference, if any, in the burden of proofs. The courts realized this when abandoning the concept of ordinary versus gross negligence, and we should likewise abandon the concept of ordinary versus middle burden of proof.

I am authorized to state that Judge RALPH ADAM FINE joins in this concurrence.