**COURT OF APPEALS
DECISION
DATED AND FILED**

**October 6, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1989**

STATE OF WISCONSIN

Cir. Ct. No. 2010CV1331

IN COURT OF APPEALS
DISTRICT III

---

JAMES SWIDERSKI,

   PLAINTIFF-RESPONDENT-CROSS-APPELLANT,

 V.

SWIDERSKI EQUIPMENT, INC. AND MARATHON IMPLEMENT
COMPANY, INC.,

   DEFENDANTS-APPELLANTS-CROSS-RESPONDENTS.

---

APPEAL and CROSS-APPEAL from a judgment of the circuit court for Marathon County: JOHN B. RHODE, Judge. *Affirmed in part; reversed in part and cause remanded with directions.*

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Swiderski Equipment, Inc. ("SEI") and its wholly owned subsidiary, Marathon Implement Company, Inc. ("MIC"), appeal a money judgment entered following a jury verdict in favor of James Swiderski.[1] James' claims against SEI and MIC related to a promissory note MIC issued to James in 1987. Following a trial, a jury found that: (1) James and MIC had modified the note's due date at various times, eventually making it payable on demand; (2) the parties had agreed to add amounts MIC owed to James for rent to the balance due on the note; (3) the parties had agreed to compound monthly the interest due on the note; and (4) MIC had breached the terms of the note when it failed to make payments after James' January 21, 2009 demand for payment.

¶2 MIC raises a multitude of issues on appeal. Primarily, it argues that James' claims should have been dismissed as a matter of law, all of which assertions we reject. We also reject MIC's arguments that it is entitled to a new trial by virtue of several alleged evidentiary errors, that the verdict was not supported by credible evidence, and that the circuit court erred by awarding James costs and attorney fees. Accordingly, we affirm on each of these issues.

¶3 We agree with SEI, however, that it should have been dismissed as a party based upon the absence of any evidence that it was directly liable on the note between MIC and James. We reverse on that issue and remand with directions that the circuit court dismiss SEI with prejudice with respect to any claim that SEI is directly liable to James for damages due to SEI's alleged breach of the note. An issue that was raised in postverdict proceedings—i.e., whether James could pierce

---

[1] Because the underlying transactions also involve James' father, Alex Swiderski, we will refer to the Swiderskis by their given names throughout this opinion.

the corporate veil to hold SEI liable in the amount of the judgment against MIC—is a collection issue and has yet to be litigated. Accordingly, the dismissal should be without prejudice with respect to any claim that corporate veil-piercing principles make SEI liable for the amount of the judgment against MIC.

¶4 Finally, James cross-appeals, asserting that he is entitled to the contractual 18% default interest rate following the verdict and judgment rather than the lower statutory rate. We conclude the merger-of-contract doctrine precludes James from seeking a postverdict and postjudgment rate greater than that set forth in the relevant statutes. Accordingly, we affirm on that issue.

## BACKGROUND

¶5 Many of the background facts relevant to this appeal are undisputed and have been set forth in our decision in a prior appeal.[2] In 1987, Alex Swiderski, James' father, purchased the assets of an implement dealership known as Marathon Implement, then owned by David and Joyce Laszewski. *Swiderski v. Swiderski*, No. 2014AP2061, unpublished slip op., ¶2 (WI App May 17, 2016). The acquired land and an existing building on it constituted $250,000 of the total purchase price. *Id.* Despite the fact that the real property was valued at only $250,000 under the contract, the purchase was financed, in part, by requiring the payment of $450,000 under a land contract with the Laszewskis, payable in fifteen annual installments plus annual interest at an 8% rate. *Id.*

---

[2] In that appeal, we determined that the circuit court erred by granting a partial summary judgment to James. *See Swiderski v. Swiderski*, No. 2014AP2061, unpublished slip op., ¶1 (WI App May 17, 2016). Although this appeal arises in a different procedural posture (i.e., after the jury trial), we do not regard the facts as stated in that opinion, and set forth here, to have been disputed at trial.

3

¶6     Alex created MIC as a wholly owned subsidiary of SEI, with James as the company president.   Alex and James transferred the newly acquired business assets to MIC. *Id.*, ¶3.  They individually took title to the real estate and building, with Alex owning 75% and James 25%, respectively. *Id.*   Alex and James then leased the real property to MIC, which was required to pay them monthly rent in the amount of $3,833.34, for a total annual rent of $46,000.08. *Id.*, ¶4.  James' share of the annual rent was $11,500.02. *Id.*

¶7     Because the acquired real property was worth only $250,000, the financing arrangement resulted in Alex and James taking on an additional $200,000 in debt for the benefit of MIC. *Id.*, ¶5.  Accordingly, MIC executed a promissory note to Alex in the amount of $150,000 and a promissory note to James in the amount of $50,000. *Id.*  James' promissory note (which is the note central to this appeal) stated that the "principal shall be due and payable in full on April 14, 1992."   The note carried a 10% annual interest rate, with interest payments due on or before March 31 of each year.  The first interest payment was due on March 31, 1988.  Principal and interest not paid when due would incur interest at an 18% rate from the date of maturity until the sums were paid.

¶8     James brought suit against SEI and MIC in 2010 alleging, as relevant here, that they had refused to make any payment on the balance of the note.  James also alleged that, between the time the note was executed and when he demanded payment, the note's due date had been extended several times, and the note was ultimately converted to one that was payable on demand.  He further alleged that the amounts MIC owed James for rent and interest had not been paid to him but, instead, had been added to the note's balance and compounded monthly.  As evidence, James relied on company financial records, MIC ledger

4

sheets that showed the running balance of the note, and various other corporate records. *Id.*, ¶¶7-9.

¶9 MIC moved for summary judgment citing various defenses, and James moved for partial summary judgment seeking an order compelling MIC to pay James all amounts owed to him. *Id.*, ¶10. MIC appealed from the circuit court's ruling in James' favor, and on appeal we concluded there were "genuine issues of material fact … regarding the extent, if any, to which the parties intended to modify the notes." *Id.*, ¶15. Whereas the circuit court had determined there was no genuine issue of material fact regarding "ongoing modifications" to James' note, we concluded James' *legal* right to a judgment was not sufficiently clear because the MIC bylaws appeared to require corporate authorization to borrow money and because the corporate minutes were insufficiently specific to compel the conclusion that such borrowing had been authorized. *Id.*, ¶¶19-24.

¶10 We also determined there was a genuine issue of material fact regarding "whether the parties treated the ledger accounts as capital investments." *Id.*, ¶28. We cited deposition testimony from witnesses that the note was fictitious and designed only for tax and accounting purposes. *Id.* In all, we concluded the "material presented on the motion for partial summary judgment was subject to conflicting interpretations, and reasonable persons could differ as to its significance." *Id.*, ¶29. We reversed the grant of summary judgment and remanded for further proceedings, noting that "[d]epending on what the factfinder determines on the issue of the parties' intent concerning modification of the note, any claims on the note may or may not be precluded by an applicable statute of limitations." *Id.*, ¶30.

5

¶11 On remand, the circuit court held a five-day jury trial. At the conclusion of the trial, the jury found that: the promissory note evidenced an agreement between James and MIC; the note's due date had been extended at various times by agreement of the parties and ultimately was made payable on demand; the parties had agreed to periodically add rental payments owed to James to the note's balance; and the parties had agreed to compound interest due on the note on a monthly basis. The jury concluded MIC had breached the agreement by failing to pay James when he demanded payment on January 21, 2009, and it further found that he should be compensated a total of approximately $1.6 million as a result of the breach.

¶12 MIC filed postverdict motions, which the circuit court denied following a hearing. Among other things, the court rejected MIC's assertions that the modifications to the promissory note failed to comply with corporate and statutory requirements, that James' claim was barred by the applicable statute of limitations, and that certain alleged evidentiary errors and improper jury instructions warranted a new trial. The court also rejected MIC's request to have all of the jury's verdict answers changed.

¶13 At the same time, the circuit court addressed several motions filed by James. As relevant here, the court rejected James' assertion that postjudgment interest was to be compounded monthly at an 18% rate according to the note, rather than at a rate of 1% above the prime rate according to WIS. STAT. §§ 814.04(4) and 815.05(8) (2017-18).[3] The court agreed, however, that James

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

was entitled to collection costs and fees under the terms of the promissory note, including reasonable attorney fees.

¶14    Finally, the circuit court addressed a motion seeking to dismiss SEI from the case for lack of evidence of any liability on SEI's part. The court agreed there was no evidence establishing SEI's liability for any of James' damages, but the court nonetheless determined that it might be required to "pierce[] the corporate veil and apply[] the alter ego doctrine to hold SEI accountable for MIC's liability if necessary." The court found this potential exercise of its equitable authority was appropriate because of the closely held nature of the businesses and the overlap in common ownership. Though the court declined to dismiss SEI from the case, it stated it would not grant any judgment against SEI at that time, apparently contemplating that a future motion could be made if necessary.

¶15    SEI and MIC now appeal, asserting that the judgment against MIC was legally flawed in several ways, that the circuit court made numerous trial errors, and that SEI should have been dismissed as a party. James cross-appeals, asserting the court erred by refusing to order postjudgment interest at the 18% penalty rate stated in the promissory note.

# DISCUSSION

## I. Appeal

### *A. SEI should have been dismissed as a party.*

¶16    As an initial matter, we agree with SEI that it should have been dismissed as a party to this action.[4]   The only claim against SEI pled in the amended complaint that is relevant to this appeal was one for breach of contract, whereby James alleged SEI *and* MIC had promised, but failed, to repay the promissory note.   James all but concedes there was no evidence presented at trial of SEI's obligations relating to the note.   Indeed, the special verdict form referred to only MIC and James; SEI was wholly absent.

¶17    James acknowledged in a pretrial letter to the circuit court that there was no basis to hold SEI directly liable on the note, urging instead that SEI remain a party because there was a "significant amount of financial interplay between the two companies, including what is in essence a sweeping of MIC's profits each year into SEI."   This basis was again invoked when SEI filed a postverdict motion for dismissal, in opposition to which James noted that the financial relationship between SEI and MIC was "not a part of the May 2018 jury trial."   In that filing, James for the first time requested that the court "pierce the corporate veil" as an equitable remedy.

---

[4]  James argues we should not consider this issue because SEI has insufficiently briefed it by failing to address corporate veil-piercing principles or the basis upon which the circuit court determined they may be applicable.   Neither of these matters is germane to the basis upon which SEI argues it should be dismissed, and we therefore reject James' arguments in this regard.

¶18    The unavoidable question is, "equitable remedy for what?" Heretofore, no claims have been litigated against SEI. It may be true, as James suggests, that MIC and SEI have no independent financial identity, but that possibility alone does not establish any liability on the part of SEI. Rather, any liability for SEI appears to be purely a matter of collection on the now-existing judgment against MIC. James acknowledged in the circuit court that further discovery would be necessary to ascertain the degree of SEI's liability for that judgment, if any. And the circuit court declined to actually apply corporate veil-piercing principles to hold SEI liable for the amount of the verdict, stating it would hold the matter open to determine whether MIC actually had the assets to pay the judgment.[5] To date, it appears there has been no evidentiary hearing or determination that veil-piercing is appropriate or necessary.

¶19    Given that SEI remains in this lawsuit only as a result of a potential corporate veil-piercing claim that has not yet been litigated and that may or may not be necessary given MIC's financial status, we conclude the circuit court should have granted SEI's motion to be dismissed as a party. The dismissal shall be with prejudice with respect to any claim that SEI is directly liable to James on the note, but without prejudice with respect to any claim that corporate veil-piercing principles make SEI liable for the amount of the judgment against MIC. We remand to the circuit court to effectuate such a dismissal.

---

[5] Given the factors discussed herein, and the fact that the notion of corporate veil-piercing was first raised in James' response to SEI's motion to dismiss it as a party, we do not find compelling James' assertion that this court should not consider SEI's argument due to its failure to properly brief the matter in the circuit court.

### B. MIC was not entitled to a judgment as a matter of law.

¶20     Much of MIC's brief is dedicated to the notion that the circuit court was required, as a matter of law, to grant a judgment in MIC's favor.[6]   MIC presents a variety of arguments in support of this notion, including that: (1) the note unambiguously called for simple interest; (2) a corporate resolution was necessary to authorize any modification to the note that would have increased the amount of MIC's indebtedness; (3) a heightened degree of proof of such modifications is required given James' status as a company "insider"; and (4) James' claim is barred by the six-year statute of limitations on contract claims.

¶21     We can easily dispose of most of these assertions.  First, although MIC accuses the circuit court of failing to interpret the note and therefore abdicating its role as the sole "expert on domestic law," see **State v. Pico**, 2018 WI 66, ¶43, 382 Wis. 2d 273, 914 N.W.2d 95, the case was tried on the theory that a number of unwritten modifications agreed to by the parties changed material terms of the promissory note.  As such, even if the original language in the note was clear and unambiguous, as MIC suggests, that language would not entitle MIC to

---

[6] We note that MIC's brief is not a model of clarity.  The arguments are not clearly sequenced and often drift into other topics or legal areas, complicating this court's efforts to resolve an already complicated case.  To the extent MIC raises an issue we have not addressed, we deem that argument inadequately briefed and decline to address it.  **See State v. Pettit**, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (holding that the court may decline to review issues that are inadequately briefed and supported only by general statements).

judgment now, after the jury has concluded that modifications were, in fact, made.[7]

¶22    MIC's arguments emphasizing James' status as a company "insider" and the necessity of a corporate resolution specifically authorizing the additional debt payable to him are interrelated.  In MIC's view, James' status as MIC's president and a director, as well as his duties of disclosure under state statute by virtue of those roles, provide additional justification for requiring a specific resolution under § 5.02 of MIC's bylaws.  MIC argues there was no evidence that any of the modifications were approved by MIC's board of directors.

¶23    We conclude there was no need, as a matter of law, for a specific board resolution of the type MIC claims was necessary.  It is undisputed that the promissory note was specifically approved by unanimous consent of the board on April 17, 1987.  As to the extensions of the note's due date, the note itself provided that the parties consented to "any and all extensions and renewals hereof without notice"; as a result, the board's initial action of approving the note also approved of any extensions to which the parties might agree.

¶24    As to the issue of debt authorization, we do not agree with MIC that James, as MIC's president, could not incur additional debt without specific board approval.  Section 5.02 of MIC's bylaws, on which MIC relies, states as follows:

---

[7] MIC appears to challenge the form of a verdict question regarding whether there was an agreement to provide for the compounding of interest.  It apparently takes issue with the fact that the question used only the verb "agree" rather than the phrase "agree[] to modify."  We take MIC to be implying that the circuit court left to the jury the task of determining how interest was to be calculated on the written note.  We do not find the distinction MIC draws compelling, and, in any event, MIC does not make a cognizable argument that the circuit court erroneously exercised its discretion in crafting Question 6 on the special verdict form.  We note that the jury was asked to reach Question 6 only if it found that other modifications to the note had been made.

11

> 5.02. <u>Loans</u>. No indebtedness for borrowed money shall be contracted on behalf of the corporation and no evidences of such indebtedness shall be issued in its name unless authorized by or under the authority of a resolution of the Board of Directors. Such authorization may be general or confined to specific instances.

As an initial matter, we note that this section does not require a written resolution for the authorization of loans. More important, however, is that James, as MIC's president, had the general authorization, pursuant to § 4.05 of MIC's bylaws, to "sign, execute and acknowledge, on behalf of the corporation, all deeds, mortgages, bonds, stock certificates, contracts, leases, reports and *all other documents or instruments necessary or proper to be executed in the course of the corporation's regular business*, or which shall be authorized by resolution" of the board of directors.[8] (Emphasis added.)

¶25    MIC does not argue the modifications to the promissory note were not done in the course of the company's regular business.[9] Rather, MIC argues that James was required, but failed, to disclose "the potential impact of the 'modifications' to other members of the Board." As a result, MIC argues James violated WIS. STAT. § 180.0831(2)(a), (2)(c), and (4), and there was no basis for James' claimed modifications to go to trial on a breach of contract theory.

---

[8] The bylaws themselves had been approved by unanimous resolution of MIC's board of directors on the same date the board approved the promissory note. We also note that WIS. STAT. ch. 180 contains a provision linking such bylaw language to the lawful duties of corporate officers. *See* WIS. STAT. § 180.0841.

[9] Any such argument would be incompatible with the jury's verdict, which we construe to include the notion that MIC was benefitted to the extent that James kept the money he was owed in MIC so as not to impair the company's financial status. We view the evidence in the light most favorable to the jury's determination. ***Morden v. Continental AG***, 2000 WI 51, ¶39, 235 Wis. 2d 325, 611 N.W.2d 659.

¶26    Although such an argument appears to have been presented in some fashion to the circuit court during the jury trial, we are not persuaded by MIC's appellate arguments regarding WIS. STAT. § 180.0831. Assuming for the sake of argument that the modifications constituted conflict-of-interest transactions, § 180.0831(2) states that such transactions are "not voidable by the corporation solely because of the director's interest in the transaction if any of" three circumstances is present. Only two of those circumstances focus on disclosure. *See* § 180.0831(2)(a), (2)(b). But the transaction also is not voidable if it was "fair to the corporation," *see* § 180.0831(2)(c), a topic on which MIC has clear opinions but offers little by way of legal analysis, particularly given the jury's findings.[10] We deem any assertion that MIC was entitled to judgment as a matter of law based on § 180.0831 inadequately developed. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (holding that the court may decline to review issues that are inadequately briefed and supported only by general statements).

¶27    That leaves only MIC's assertion that James' claim is barred by the six-year statute of limitations.[11] Some of MIC's arguments for concluding that

---

[10] In addition to failing to explain how the modifications were unfair to MIC given the jury's findings, MIC wholly fails to explain the standard by which one is to judge whether a given transaction is "fair to the corporation," and whether that standard is amenable to resolution as a matter of law by an appellate court.

[11] Although MIC argues the limitations period is six years, it does not cite to any particular statute or other authority establishing such a limitations period for the claims at issue in this case. *See **Pettit***, 171 Wis. 2d at 646 (noting that court of appeals is under no obligation to consider arguments unsupported by references to legal authorities). Nonetheless, we assume without deciding that a six-year limitations period is applicable.

In the prior appeal, MIC relied on WIS. STAT. §§ 403.118(1), 893.43, and 893.45. Despite MIC not citing any of these statutes in its briefs, James has addressed those statutes in his analysis of the statute of limitations issue. We agree with James' analysis of the statutes and the case law decided thereunder.

13

James' claims are time barred rely on legal arguments that we have already rejected. Separately, MIC argues that James "failed to present any admissible, credible evidence of an agreement by MIC to extend the March 31, 1988 due date for payment of interest before it expired." MIC essentially argues that because no interest was paid, but rather the money owed was added to the existing debt and treated as income to James for tax purposes, the statute of limitations began to run as of March 31, 1988, and James' claim for breach is now time barred.

¶28 To reach this result, MIC argues James' testimony that the due dates on the note were extended was patently incredible, and it urges us to apply a rule "similar to the sham affidavit rule" to deem his testimony purely speculative. MIC concedes, however, that it would have no basis for a statute of limitations defense "[i]f the interest and rent were actually paid." Yet that factual finding was the linchpin of James' theory of the case, which the jury plainly accepted. Namely, in lieu of actual payment of rent and interest, James and MIC agreed to treat the money as having been paid for tax purposes (with James incurring the corresponding tax obligation and MIC taking the tax deduction) and have it loaned back to the company by converting it to long-term debt.[12] Contrary to MIC's view, such a transaction is not inherently "silly" and does not require one to be living in an "altered universe or altered state of consciousness" to understand it. Furthermore, any of the arguments MIC advances on appeal regarding James' allegedly patent incredibility were made, or could have been made, to the jury in an attempt to impeach James' theory. It was within the jury's province to determine whom to believe. *See **State v. Wilson***, 149 Wis. 2d 878, 894, 440

---

[12] The ledger admitted at trial shows that interest began compounding in 1987, well before the March 31, 1988 interest payment was due.

N.W.2d 534 (1989) ("The function of weighing the credibility of witnesses is exclusively in the jury's province ....").

¶29   As a result of the due-date extensions found by the jury, the only question is whether James' action was timely from the standpoint of his demand for payment. It plainly was. James demanded payment on January 21, 2009. This lawsuit was commenced in 2010, with an amended complaint filed in 2012. The lawsuit was plainly filed within six years of James' demand for payment on the note.

*C. MIC is not entitled to a new trial based on any of the alleged errors.*

¶30   Next, MIC argues that evidentiary errors and errors in formulating the jury instructions and special verdict form entitle it to a new trial. The admission of evidence is a discretionary decision reviewed using the erroneous exercise of discretion standard. *State v. Ringer*, 2010 WI 69, ¶24, 326 Wis. 2d 351, 785 N.W.2d 448. Similarly, "[t]he form of a special verdict is discretionary with the trial court and this court will not interfere as long as all material issues of fact are covered by appropriate questions." *Meurer v. ITT Gen. Controls*, 90 Wis. 2d 438, 445-46, 280 N.W.2d 156 (1979). What instructions to give a jury, and the content of those instructions, are also discretionary determinations by the circuit court. *Id.* at 448-49. We will affirm a circuit court's exercise of discretion as long as the court reviewed the relevant facts, applied a proper standard of law, and used a rational process to reach a reasonable conclusion. *Nickel v. Wells Fargo Bank*, 2013 WI App 129, ¶16, 351 Wis. 2d 539, 841 N.W.2d 482.

### 1. The formulation of the special verdict did not prevent the real controversy from being tried.

¶31    MIC, emphasizing that a circuit court should "first consider the issues raised by the pleadings" when drafting a special verdict form, *see* ***Lagerstrom v. Myrtle Werth Hosp.—Mayo Health Sys.***, 2005 WI 124, ¶97, 285 Wis. 2d 1, 700 N.W.2d 201 (citation omitted), argues that the special verdict lacked a sufficient nexus to the issues raised in James' amended complaint.  MIC specifically takes issue with Question 1 of the verdict form, which asked, "Did James Swiderski enter into an agreement with [MIC] in 1987, which was authorized by a corporate resolution from MIC and evidenced by a promissory note whereby MIC promised to pay James Swiderski $50,000?"

¶32    The basis for MIC's argument in this regard appears to be that the special verdict form differed from the amended complaint's allegation that James and MIC "entered into a contract with MIC in 1987 whereby he loaned $50,000 to MIC, a wholly[-]owned subsidiary of SEI, to fund its operations."  MIC's theory at trial was that no loan occurred and that it was never the parties' intention to repay the $50,000 debt to James.  In essence, MIC claims the special verdict was faulty because it assumed the existence of a $50,000 loan.  MIC further argues that this defect tainted the remainder of the special verdict form.

¶33    We disagree.  Question 1 of the special verdict form does not presuppose the existence of an agreement; it asks if an agreement exists.  The fact that James was able to present strong evidence of a debt—including the signed promissory note and the corporate resolution authorizing it—does not mean the special verdict form used here was erroneous.  The jury could have answered "no" to Question 1 if it found that there was no agreement or if it found that the promissory note was fictitious and not representative of a true debt—both

possibilities that MIC had urged during its closing arguments.[13] Further, the jury was fully instructed on the law of contract, including the necessity of consideration.

¶34 MIC also appears to challenge the special verdict form questions relating to an extension of the promissory note's due date and the effect of those modifications to the applicable statute of limitations. To the extent we can perceive any cognizable argument in MIC's inadequate briefing of this issue, we reject it for the reasons explained above. *See supra*, ¶¶27-29.

¶35 Additionally, MIC argues that any change in the due dates required an "unequivocal new written agreement" or "unequivocal new promise." As explained above, if the jury had determined that the due dates on the note had not been extended, MIC might have a colorable statute of limitations defense. But because the jury found the requisite modifications to the note had been made, there is no basis for any argument that James' lawsuit was untimely. *See supra*, ¶¶27-29. We perceive no basis for reversal with regard to Questions 2 through 4 of the special verdict.[14]

> ### 2. MIC is not entitled to a new trial due to alleged evidentiary errors.

¶36 MIC next argues the circuit court erred by allowing James to offer testimony, and by allowing the cross-examination of other witnesses, regarding the

---

[13] As a result, the net effect of the special verdict's language in this regard is no different than if the circuit court had used MIC's preferred wording.

[14] We note that the fact that the circuit court did not use MIC's preferred special verdict form is, in and of itself, not a basis for reversal. What is required is that the special verdict form and the jury instructions fully and fairly inform the jury regarding the applicable principles of law. *Estate of Hegarty ex rel. Hegarty v. Beauchaine*, 2006 WI App 248, ¶46, 297 Wis. 2d 70, 727 N.W.2d 857. Based upon our review of the briefs and record, the verdict form and instructions satisfied this standard.

treatment of compound interest in other transactions by the companies. MIC challenges Exhibit 182 on the same basis, which exhibit apparently chronicles the debt that another subsidiary of SEI owed to a third party, Thorp Properties. MIC argues that this evidence lacked foundational relevance and was inadmissible because of the dissimilarity of the respective transactions to the transaction at issue.

¶37 We conclude the circuit court did not erroneously exercise its discretion in admitting this evidence. Relevancy is a low bar and includes evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." WIS. STAT. § 904.01. Under WIS. STAT. § 904.06(1), "evidence of the … routine practice of an organization … is relevant to prove that the conduct of the … organization on a particular occasion was in conformity with the … routine practice."

¶38 Here, MIC claims the evidence was irrelevant because "none [of the other transactions] were even remotely similar to the transaction in question." In discussing why MIC believes this proposition is so, however, MIC selects such an oddly specific set of circumstances—such as the transactions being based on a promissory note that "specifically defined the interest rate and how it should be calculated," and the transactions remaining "in a ledger and on the company's book for in excess of 20 years"—that it seems hardly any company transaction would qualify.[15] Such specificity is not required for relevance under these

---

[15] In its reply brief, MIC suggests another distinguishing characteristic—i.e., that "all other instances where interest was compounded involved situations where money was lent to the debtor." This argument appears to echo MIC's broader contention that there was no loan in this case, which the jury rejected.

circumstances; rather, the material distinctions MIC urges go to the weight of the evidence.

¶39    The evidence here—which includes James' testimony that "the interest is actually compounded monthly as is our practice for every one of the notes that I can recall ever in our company history"—plainly had some relevance to the ultimate question of whether the parties had agreed to modify the promissory note to include compound interest. Moreover, there was testimony that SEI and MIC desired to have the accounting regarding debts be consistent across the companies. MIC has failed to demonstrate error in relation to the admission of the challenged evidence.

¶40    MIC also argues it was error for the circuit court to permit "James and his expert witnesses to testify on questions of law regarding their beliefs on what MIC's Bylaws, the terms of the April 15, 1987 written Promissory Notes, the accountant representation letters and various provisions of [WIS. STAT. ch.] 180 meant in the context of this case." The pertinent argument sections fail to provide record citations to the relevant portions of testimony, however. This court has no duty to scour the record to review arguments unaccompanied by adequate record citation. *Roy v. St. Lukes Med. Ctr.*, 2007 WI App 218, ¶10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256.

¶41    In any event, James responds that, prior to any of the challenged testimony James introduced, MIC opened the door to testimony regarding such legal matters by calling one of its fact witnesses, an attorney, out of order and asking about the meaning of the promissory note's interest provisions. MIC fails to respond to this argument in its reply brief. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments may be deemed conceded). Instead, MIC posits in its reply brief that there were other, additional evidentiary errors, including the erroneous

admission of financial information. It is well established that an appellant may not raise an issue for the first time in its reply brief. ***A.O. Smith Corp. v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998).

> *D. MIC has not demonstrated there was insufficient evidence to support the jury verdict.*

¶42     MIC asserts there was no "admissible[,] credible evidence to support a claim that James and MIC agreed to compound the default or penalty interest on a monthly basis." In its reply brief, MIC acknowledges that James and others testified as to the note's modification in order to reflect compound interest, but it argues such testimony was inadmissible because the "[i]nterpretation of the Note was a legal question for the Court and there was absolutely no foundation to admit James' testimony as a MIC business practice." We have already rejected MIC's arguments that the circuit court erred by failing to make a declaration regarding the note's interest provisions and by admitting testimony regarding legal conclusions. *See supra*, ¶¶21-26, 40-41. We perceive no basis to revisit those issues given MIC's conclusory assertions here regarding the sufficiency of the evidence.

¶43     MIC also asserts the amount awarded by the jury was "exceedingly excessive," and it requests that we "exercise [our] power under [WIS. STAT.] § 805.15(6) to reduce the damages to $379,759.08." The power under that statute is initially vested in the circuit court, with the reviewing court determining de novo whether the verdict was excessive only if the circuit court "fails to analyze the evidence … or fails to state the reasoning behind its decision." *See Carlson & Erickson Builders, Inc. v. Lampert Yards, Inc.*, 190 Wis. 2d 650, 669-70, 529 N.W.2d 905 (1995). MIC provides no basis for this court to reduce the awarded damages, other than its bare assertion that it was inappropriate under

the promissory note to compound the penalty interest. To the extent this court has authority under § 805.15(6), we decline to exercise it based on MIC's scant briefing.

### E. The circuit court did not err by ordering costs and attorney fees.

¶44　Finally, MIC argues it was error for the circuit court to award James costs and attorney fees. The promissory note states: "Upon default, the undersigned agrees to pay any and all costs and expenses of collection including all attorneys' fees, whether payment is enforced by suit or otherwise, should this note be placed in the hands of an attorney." Thus, the note falls under the exception to the American Rule allowing for the parties to contract for the award of attorney fees. *See Estate of Kriefall v. Sizzler USA Franchise, Inc.*, 2012 WI 70, ¶72, 342 Wis. 2d 29, 816 N.W.2d 853.

¶45　MIC argues the agreement exception to the American Rule does not apply here because, as a result of the modifications to the note over time, "James sought to enforce a whole new contract." That is, because of the modifications, MIC claims "the" contract did not "clearly and unambiguously" provide for an award of attorney fees. *See Hunzinger Constr. Co. v. Granite Res. Corp.*, 196 Wis. 2d 327, 340, 538 N.W.2d 804 (Ct. App. 1995). We reject these arguments because MIC's assertion that there was a "whole new contract" was not litigated; rather, MIC's position was that the note memorialized a fictitious debt. The jury rejected that position and found that the note memorialized an agreement of the parties, who then subsequently agreed to modify various material provisions of that note. The fee-shifting provision was not among those provisions modified. As such, the circuit court properly awarded James costs and fees under that provision.

## II. Cross-Appeal

¶46    James cross-appeals, asserting that the circuit court erred by refusing to grant postjudgment interest at the 18% penalty rate stated in the promissory note.    Instead, the court applied WIS. STAT. § 814.04(4)—which states that, generally, an interest rate of 1% above the prime rate applies from the time of verdict until the judgment is entered—and WIS. STAT. § 805.05(8)—which applies the same rate after the judgment is entered until it is paid.  We conclude the circuit court properly applied the interest rate required by §§ 814.04(4) and 805.05(8).

¶47    ***Waukesha Concrete Products Co. v. Capitol Indemnity Corp.***, 127 Wis. 2d 332, 379 N.W.2d 333 (Ct. App. 1985), resolved this issue.  There, the court held that by operation of the merger doctrine, any claim for interest based on a contract that has been reduced to a judgment is "extinguished upon the entry of a final judgment," and it is substituted with a potential new cause of action based on the judgment.  ***Id.*** at 344.  As a result, unless the parties expressly contract for a higher rate of postjudgment interest, the contract is merged with the judgment and the statutory rate prevails.  *See **id.*** at 343-44 & n.5.  Despite James' arguments to the contrary, there simply was no express agreement—either in the note or otherwise—against the application of the merger doctrine here.

¶48    No WIS. STAT. RULE 809.25 costs are awarded to either party.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.